IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CINDY MADRID,

    Plaintiff,

v.                                                                                                         2:15-cv-00874-MV-LF

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON
MOTION TO REVERSE AND REMAND**

THIS MATTER comes before the Court on plaintiff Cindy Madrid's Motion to Reverse Commissioner's Administrative Decision and Remand Claim (Doc. 26), which was fully briefed June 3, 2016.  Pursuant to 28 U.S.C. § 636, the Honorable Martha Vasquez referred this matter to me for a recommended disposition.  Doc. 21.  Having carefully reviewed the parties' submissions and the administrative record, I recommend that the Court DENY Ms. Madrid's motion.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a). The claimant also must establish that he or she became disabled before his or her last insured date. *See* 42 U.S.C. 423(c)(1); *Blea v. Barnhart*, 466 F.3d 903, 909

(10th Cir. 2006) (the claimant "only qualifies for disability benefits if he can show that he was disabled prior to his last insured date").

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.    Background and Procedural History

Ms. Madrid is 56 years old and resides with her minor child.  AR 130–31.  She holds college degrees in chemistry and the philosophy of religions, and completed laser electro optics technician school after college.  AR 40, 160.  She worked for approximately 17 years as an electro optical technician and optical engineer.  AR 22, 39, 150.  Ms. Madrid filed an application for disability insurance benefits on September 22, 2011, alleging disability since January 1, 2004 due to sleep apnea, back pain, arm pain, leg pain, plantar fasciitis, obesity, esophagus damage,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

respiratory problems, pancreatitis, depression, a sleeping disorder, high blood pressure, and a thyroid condition. AR 130–36, 159, 200.

Ms. Madrid filed a previous application for disability insurance benefits on June 19, 2009, which the Social Security Administration ("SSA") denied on October 5, 2009. AR 14. Ms. Madrid did not seek reconsideration of that decision. *Id.* Applying the doctrine of *res judicata* and declining to reopen her first claim, the ALJ held that Ms. Madrid's current claim could only address the time period spanning from the day after her first claim was denied until the date she was last insured: October 6, 2009 through September 30, 2010. *Id.* at 14–15.

The SSA initially denied Ms. Madrid's current claim on June 8, 2012—finding that the evidence failed to show she was disabled at any time prior to the date she was last insured. AR 80–82. The SSA denied her claims on reconsideration on January 23, 2013. AR 86–87. Ms. Madrid requested a hearing before an administrative judge ("ALJ"). AR 88–89. On January 8, 2014, ALJ Barry O'Melinn held a hearing. AR 29–77.

The ALJ issued his unfavorable decision on February 25, 2014. AR 11–28. At step one, the ALJ found that Ms. Madrid had not engaged in substantial, gainful activity during the period from her prior disability denial through her last insured date.[3] AR 16. Because Ms. Madrid had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 17–19. At step two, the ALJ found that Ms. Madrid suffered from the following severe impairments: obesity, and back, neck and hip disorders. AR 17. The ALJ also found that Ms. Madrid had the following nonsevere impairments: hypertension, gastroesophageal reflux disease (GERD), diabetes mellitus, obstructive sleep apnea, plantar fasciitis, depression, and obsessive

---

[3] Ms. Madrid worked part time (20 hours per week) as a receptionist from March 2010 until September 2010. AR 16. However, the ALJ found that she earned less than the $1,000 per month necessary to constitute substantial gainful activity. AR 16-17.

4

compulsive disorder.[4] AR 17. At step three, the ALJ found that none of Ms. Madrid's impairments, alone or in combination, met or medically equaled a Listing. AR 19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Madrid's RFC. AR 19–22. The ALJ found that:

> [C]laimant has the residual functional capacity to perform medium work[5] as defined in 20 CFR 404.1567(c) with the following exceptions: The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to operational control of moving machinery, unprotected heights and hazardous machinery. Further, the claimant should avoid direct contact with latex and adhesives.

AR 19.

At step four, the ALJ concluded that Ms. Madrid was unable to perform any of her past relevant work. AR 22. At step five, the ALJ found Ms. Madrid was not disabled, concluding that, through the date she was last insured, she still could perform jobs that exist in significant numbers in the national economy—such as photo copier, cashier II, and office helper. AR 23.

On August 13, 2015, the Appeals Council denied Ms. Madrid's request for review. AR 1–6. Ms. Madrid timely filed her appeal to this Court on September 30, 2015. Doc. 1.

---

[4] The ALJ found that Ms. Madrid also suffered from the severe impairments of pancreatitis, a hernia, a thyroid disorder, as well as nonsevere impairments of latex and adhesive allergies. AR 17. However, the ALJ found that these medically determinable impairments occurred after Ms. Madrid's last insured date, and therefore were not relevant to her claim. *Id.*

[5] It appears that the ALJ's statement that Ms. Madrid could do "medium" work, AR 19, is a typographical error, and that the ALJ meant to say she was capable of doing light work. *See* AR 22 ("The claimant's current [RFC] limits her to light exertional work with limitations in postural activities."); AR 23 (discussing Ms. Madrid's ability to do less than a "full range of light work"); AR 71 (where the ALJ asks VE to consider a person "who can do work at the light exertional level" with all of the additional limitations later adopted in the RFC findings). None of Ms. Madrid's arguments turn on this issue. I therefore find this error to be harmless.

**IV.   Ms. Madrid's Claims**

Ms. Madrid raises two arguments for reversing and remanding this case: (1) the ALJ failed to properly consider the combination of Ms. Madrid's impairments in light of her obesity and (2) the ALJ improperly evaluated Ms. Madrid's credibility. For the reasons discussed below, I find these arguments unpersuasive and recommend that the Court deny the motion to remand.

**A.   The ALJ properly considered the combination of Ms. Madrid's impairments, including her obesity.**

Ms. Madrid argues that the ALJ erred by "not properly considering the combination of her impairments." Doc. 26 at 4. Specifically, Ms. Madrid argues that the ALJ failed to properly analyze, discuss, or explain the effects of Ms. Madrid's obesity on her other impairments. *Id.* at 5. Ms. Madrid further argues that the ALJ failed to adequately discuss the limitations imposed by her fatigue stemming from her obesity and sleep apnea. *Id.* at 6. The Commissioner asserts that the ALJ adequately considered the combination of Ms. Madrid's impairments, her obesity, and her fatigue symptoms. Doc. 32 at 4–8. For the reasons discussed below, I agree with the Commissioner.

Ms. Madrid asserts that the ALJ failed to properly consider the limiting effects of her obesity in making the RFC finding. The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect her ability to work. *See* 20 C.F.R. § 404.1545. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related

symptoms." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[6] In determining a claimant's RFC, the ALJ must consider all medically determinable impairments—both severe and nonsevere. *See* 20 C.F.R. § 404.1545(a)(2). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *7.

The SSA issued ruling SSR 02-1p to guide the ALJ in evaluating obesity in disability claims. In assessing an obese claimant's RFC, SSR 02-1p directs ALJs to consider the following:

> Obesity can cause limitation of function. . . . An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

---

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs because they constitute the agency's interpretation of its own regulations and foundational statutes. *See* 20 C.F.R. § 402.35; *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

Importantly, SSR 02-1p cautions that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id*. An ALJ must "not make assumptions about the severity or functional effects of obesity combined with other impairments . . . [but must] evaluate each case based on the information in the case record." *Id.* SSR 02-1p requires the ALJ to consider the effects of obesity, but does not require the ALJ "to note the absence of any evidence that [claimant's] obesity resulted in additional functional limitations or exacerbated any other impairment" for each piece of evidence the ALJ discusses. *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished).

Here, the ALJ found at step four that Ms. Madrid had the residual functional capacity to perform light work,[7] except that she could only occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; only occasionally balance, stoop, kneel, crouch and crawl; should avoid operational control of moving machinery, unprotected heights, hazardous machinery, and direct contact with latex and adhesives. AR 19. The ALJ explicitly stated that he considered SSR 02-1p and considered the effects of Ms. Madrid's obesity in formulating her RFC. AR 20. The ALJ's opinion also shows that he considered the effect of Ms. Madrid's obesity in combination with her other impairments. The ALJ stated that

> In this case, obesity is a severe impairment in combination with the claimant's musculoskeletal symptoms as it may have further impaired the claimant's ability to perform work-related activity. In the instant matter, claimant's obesity does not indicate any limits when standing alone. However, *when taken in combination with the other impairments*, it counsels in favor of the postural and exertional limitations indicated herein.

AR 20 (emphasis added). The ALJ also addressed the exertional limitations caused by her obesity and other impairments by limiting Ms. Madrid to light work, despite the fact that the state agency medical consultants found her capable of performing medium work.

---

[7] *See* footnote 5, *supra*.

8

AR 21. The ALJ explicitly stated that he found Ms. Madrid more limited than the state agency medical consultants because of his consideration of Ms. Madrid's "subjective complaints." AR 21. And, in consideration of her obesity, the ALJ included postural limitations in Ms. Madrid's RFC—limiting her to only occasional balancing, stooping, kneeling, crouching, and crawling. AR 19.

Ms. Madrid, however, argues that the ALJ failed to discuss the effect obesity had on her "other impairments," such as her "ability to attend to tasks due to fatigue and daytime sleepiness." Doc. 26 at 5. I cannot agree. Notably, the ALJ did not find fatigue and daytime sleepiness to be medically determinable impairments, so they are, instead, symptoms. *See* 20 C.F.R. § 404.1529(d)(1) (describing fatigue as a symptom). In evaluating symptoms in disability claims, the ALJ is required to undertake a two-step analysis: (1) determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms, such as pain; and (2) evaluate the intensity and persistence of claimant's symptoms to determine how these symptoms limit claimant's ability to work. 20 C.F.R. § 404.1529(b)–(c)(1). "In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ] examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 119029, at *2 (Mar. 16, 2016).

The ALJ's decision makes clear that he considered Ms. Madrid's testimony about her symptoms, including her fatigue and daytime sleepiness. The ALJ discussed Ms.

Madrid's hearing testimony and statements submitted as part of her Social Security disability application—in which she complained of sleep apnea, a sleep disorder, pain, difficulty sleeping, and lack of motivation.[8] AR 20. The ALJ considered her reported symptoms and limitations, but found that her "claims of such limited daily activities . . . [were] generally unsubstantiated by the medical evidence of record." AR 20. The ALJ reviewed the medical evidence from the relevant time period—which consisted of some treatment for back, hip, and foot pain, and some physical therapy for back pain. AR 20. The ALJ reasonably concluded that the medical evidence did not substantiate her claimed limitations, including limitations resulting from fatigue and sleepiness, and did not preclude her from all work as she alleged. *See* AR 20.

Ms. Madrid argues that the ALJ erred in finding her complaints about fatigue, sleepiness and depression unsubstantiated by the medical evidence of record; however none of the medical evidence she references falls within the relevant time period between October 6, 2009 and September 30, 2010. *See* Doc. 26 at 6–7. In addition, the ALJ found no "minimal objective findings to support her allegations of a disabling impairment *during the relevant period of alleged disability*," AR 20 (emphasis added), and Ms.

---

[8] Ms. Madrid argues that her sleep apnea was severe, and that the ALJ erred in finding it non-severe. Doc. 33 at 2–3. The ALJ determines which of claimant's medically determinable impairments, or a combination thereof, is "severe" at step two of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An ALJ's failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe. *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). This is because, "in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). As discussed above, I find that the ALJ adequately considered the combined effect of all of Ms. Madrid's medically determinable impairments.

Madrid does not point to anything in the record that contradicts this determination. Finally, the ALJ found that Ms. Madrid's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms" not credible and gave her testimony "little weight." AR 20–21. Ms. Madrid's argument that the ALJ's credibility analysis is flawed is without merit. *See* discussion *infra*.

The ALJ's decision shows that he adequately considered Ms. Madrid's reported symptoms, including her fatigue and daytime sleepiness. The ALJ also explained why he did not find her as limited as she reported. This Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty*, 515 F.3d at 1070. I therefore recommend that the Court affirm the ALJ's decision.

### B. **The ALJ's credibility determination is supported by substantial evidence.**

Ms. Madrid argues that the ALJ's credibility determination is not supported by substantial evidence, and that remand therefore is required. Doc. 26 at 8. Specifically, Ms. Madrid argues that the ALJ erred in finding that her sporadic performance of household tasks establishes that she is able to engage in substantial gainful activity. *Id.* She also argues that the ALJ mischaracterized the extent of her daily activities. Doc. 26 at 10–11. The Commissioner counters that the ALJ gave good reasons for his credibility determination—including his findings that Ms. Madrid engaged in a variety of daily activities during the relevant time period, took minimal medications, and sought little medical treatment during the relevant time period. Doc. 32 at 5–6. For the reasons discussed below, I agree with the Commissioner.

This Court may not re-weigh the evidence; it may only review the ALJ's decision to ensure that he applied the correct legal standards, and that his findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Courts generally

defer to the ALJ's credibility findings because "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnett*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation and citation omitted). However, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation and citation omitted). While the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence," the ALJ must set forth the specific evidence relied upon in evaluating the claimant's credibility. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001), *as amended on denial of reh'g* (Apr. 5, 2002). Finally, in evaluating the limiting effects of a claimant's symptoms, the ALJ considers the following factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016).[9]

---

[9] SSR 96-7p was replaced by SSR 16-3p during the pendency of this appeal. SSR 16-3p eliminated the use of the term "credibility" to clarify that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Both SSRs direct the ALJ to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms. SSR 96-7p, 1996 WL 374186, at *1; SSR 16-3p, 2016 WL 1119029, at *4. Both SSRs also direct the ALJ to apply the same seven regulatory factors in

Here, the ALJ considered both Ms. Madrid's hearing testimony and the statements she submitted as part of her disability application. AR 20. The ALJ's decision makes it clear that he considered Ms. Madrid's claimed impairments as well as her claims of pain and fatigue symptoms. AR 20 (referencing Exhibit 3E/2 and 6E/1). The ALJ, however, found Ms. Madrid's statements about the intensity, persistence, and limiting effects of her symptoms "not entirely credible." AR 20–21. While the ALJ framed his discussion as one of credibility—a term no longer used in the current SSR—the ALJ properly applied the regulatory factors in analyzing Ms. Madrid's symptoms.

The ALJ linked his findings about Ms. Madrid's symptoms to substantial evidence, using the factors outlined in 20 C.F.R. § 404.1529(c)(3), SSR 96-7p, and SSR 16-3p. First, the ALJ found that Ms. Madrid's daily activities were not as limited as she claimed, finding that "[a]lthough the claimant alleged disabling impairments, she was able to work part-time for 20 hours per week and simultaneously take online courses from March–September 2010[,]" during which time she only missed four to five days of work. AR 21. The ALJ further found that Ms. Madrid "cared for her son during her period of alleged disability, while holding down these other responsibilities." AR 21.

Ms. Madrid admits that the nature of her daily activities is a valid factor for the ALJ to consider, but argues that "the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." Doc. 26 at 8 (citing *Krauser v. Astrue*, 638 F.3d 1324, 1332–33 (10th Cir. 2011) and *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). The ALJ's opinion, unlike Ms. Madrid's brief, focused on the evidence about Ms. Madrid's daily activities during the relevant time period—from October 6,

---

evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *3; SSR 16-3p, 2016 WL 1119029, at *7.

2009 through September 30, 2010.  The ALJ relied on more than the "sporadic performance of household tasks or work" to find that Ms. Madrid could engage in substantial gainful activity.  He relied on the statements of two state agency medical consultants who found her capable of performing medium work, and on clear evidence of record showing that, during the relevant time period, Ms. Madrid worked 20 hours per week while taking college courses and tending to the basic needs of her home and minor child.  *See* AR 21.

Ms. Madrid argues that the ALJ mischaracterized the evidence about her daily activities: stating that she cared for her son, when the record shows that her son cared for her; failing to state that her part-time work was only four hours a day; and failing to state that her college coursework consisted of only one course at a time.  Doc. 26 at 10.  I am not convinced that the ALJ mischaracterized the evidence, and any omissions are technical rather than the type of mischaracterization that the Tenth Circuit has held required remand.  *See Krauser*, 638 F.3d at 1332–33 (ALJ's finding that claimant "exercised, watched television, did yard work, helped with housework, and did his own laundry" misrepresented the evidence, which showed that claimant could only exercise for four or five minutes at a time, spent ten to fifteen minutes once every week or two working in the yard, and his only housework consisted of putting dishes in the dishwasher and "halfway" making his bed); *Sitsler v. Astrue*, 410 F. App'x 112, 114, 118 (ALJ misrepresented the evidence by stating that claimant "cares for his two small children," "is able to do some house work such as dusting and vacuuming," and "can drive a car, [and] go shopping" when the record showed that claimant "has help from relatives in caring for his children; he usually has no energy to do housework; he makes only simple meals; he shops for 1–2 hours at most; he washes dishes for only a few minutes; he vacuums only once a week for a few minutes; and he does not drive very much.").

Unlike *Krauser* and *Sistler*, the ALJ in this case did not misrepresent the evidence. The ALJ's statements that Ms. Madrid "provided care for her son," AR 18, and that she "cared for her son," AR 21, are supported by the record. Ms. Madrid's initial report of daily activities on March 12, 2012 indicated that she shopped, did laundry, cleaned, and cooked simple meals with the help of her son. AR 169. Ms. Madrid's sister stated in April 2012 that Ms. Madrid cared for her son by buying groceries, preparing simple meals, driving him, and helping him with his homework. AR 179. The ALJ's statements do not mischaracterize these facts. Furthermore, although Ms. Madrid claims that "a review of [her] testimony and written statements shows that her son actually cares for her and does many of the household chores because [she] is unable to perform them," Doc. 26 at 10, there is not substantial evidence showing she had these limitations during the relevant time period. The record shows that Ms. Madrid was diagnosed with several new medically determinable impairments after the relevant time period—including pancreatitis, a hernia, and a thyroid disorder. AR 17, 186, 598, 600. In addition, Ms. Madrid testified that her health deteriorated after her last insured date: "My health went down the tubes during my student and my teaching training [in March 2012] and it culminated in a complete physical collapse." AR 59; *see also* AR 596–97. Her disability report for her appeal, dated August 3, 2012, AR 186, lists "severe fatigue" as a "new limitation" since her last disability report in February and March of 2012, AR 158–70. Her reported symptoms also show that she became more limited over time: on March 12, 2012 she reported that she fed the dogs and did the dishes, AR 169, but by January 1, 2014, she reported that her son fed the dogs and that she could not do a full load of dishes, AR 44–45, 56. Thus, while Ms. Madrid points to several statements she made at the January 8, 2014 ALJ hearing as proof that her son cared for her rather than the other

15

way around—she made these statements more than three years after the relevant time period, and after her health had further deteriorated.

The ALJ also was accurate in stating that Ms. Madrid worked part time and attended college during the relevant time period. His failure to state explicitly that Ms. Madrid's part time work was four hours a day, five days a week, or that her college course work was one course at a time, is not the type of omission that requires remand.

> Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

In addition, the ALJ discussed the medications and treatment Ms. Madrid received for her conditions, two other factors the ALJ was required to consider under 20 C.F.R. § 404.1529(c)(3), SSR 96-7p, and SSR 16-3p. The ALJ pointed out that, despite Ms. Madrid's claims of disabling conditions,

> She is currently only taking Prilosec. While the claimant testified she cannot afford other medications[,] she has some form of insurance and sees a primary care doctor. There is no evidence that the claimant has sought any subsidized care.

AR 21. The ALJ further noted that Ms. Madrid received minimal medical treatment during the relevant time period, and that the medical records for the relevant time period "contain[] minimal objective findings to support her allegation of a disabling impairment." AR 20. Under SSR 16-3p, "[a] report of minimal . . . findings . . . in the objective medical evidence is one of the many factors [an ALJ] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *5.

In sum, substantial evidence supports the ALJ's evaluation of Ms. Madrid's symptoms. I therefore do not recommend remand.

## V. Conclusion

The ALJ properly considered the combined effect of Ms. Madrid's impairments, including the effects of her obesity, and supported his credibility determinations about the severity of her symptoms with substantial evidence. I recommend that the Court DENY Ms. Madrid's Motion to Reverse and Remand (Doc. 26).

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge